UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER LYNN JOHNSON,

        Plaintiff,

v.                                                                       Case No. 1:15-cv-1239
                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff alleged a disability onset date of March 1, 2012. PageID.162. Plaintiff identified her disabling conditions as attention deficit hyperactivity disorder (ADHD), diabetes, nerve damage in left leg, nerve damage along bottom of the stomach, and a learning disability. PageID.166. She completed the 11th grade and had previous employment as a packer in a factory. PageID.167. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 2, 2014. PageID.32-42. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

2

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of March 5, 2012.  PageID.34.  At the second step, the ALJ found that plaintiff had severe impairments of: mild cognitive impairment with low IQ; ADHD, combined type; history of cannabis abuse; type II diabetes mellitus; obesity; status-post surgery for benign retroperitoneal tumor with residual dysesthesia of the left leg; and tobacco abuse.  *Id.*  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.

The ALJ decided at the fourth step that, "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to the performance of routine one or two-step tasks, with no more than occasional contact with the public, and no fast paced work requirement."  PageID.37.  The ALJ also found that plaintiff had no past relevant work.  PageID.41.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy.  PageID.41-42.  Specifically, the ALJ found that "[t]he vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a small parts assembler, an assembly press operator, or bench assembler, of which there is an aggregate of 15,000 such jobs within the regional economy defined as the state of Michigan."  PageID.42.  Accordingly, the ALJ determined that plaintiff has not been under  a disability, as defined in the Social Security Act, since March 5, 2012, the date the application for SSI was filed.  *Id*.

4

### III.  DISCUSSION

Plaintiff raised two issues on appeal:

**A.     The ALJ committed reversible error by failing to
find that plaintiff met Medical Listing 12.05C.**

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d).  *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 416.920(d).

The listing at issue, Listing 12.05C, provides in pertinent part as follows:

12.05   Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements

5

in A, B, C, or D are satisfied.  .  .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.05.

Thus, "[t]o meet the requirements of listing 12.05C, a claimant must show: (1) the claimant experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation on function." *Turner v. Commissioner of Social Security*, 381 Fed. Appx. 488, 491 (6th Cir. 2010).

Here, the ALJ noted that while plaintiff met the IQ component of Listing 12.05C, she did not have the requisite deficits in adaptive functioning:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant achieved a Full-Scale IQ score of 69 on a WAIS-IV test administered as part of a consultative exam on September 10, 2012 (Ex 3F), and the score was considered valid by the examiner, there is no evidence of the requisite degree of deficit in adaptive functioning during the claimant's developmental period.

> A school psychologist report from April 1996 (Ex 4F/page 18) noted in the "recommendations" section that the identified discrepancies in scores and achievement were not considered to be "primarily the results of visual, hearing, or motor handicaps; mental retardation, emotional disturbance; autism, or of environmental, cultural, or economic disadvantage". "These problems are primarily in the affective domain .  .  ."

> The report of a Triennial Evaluation from the schools in March 1999 includes

6

the results of IQ testing that produced scores all in the 70's. The summary of the comprehensive assessment noted that the claimant did "not appear to meet eligibility criteria for learning disabilities, but may be emotionally handicapped". Also noted was a history of significant behavior problems. An evaluator also noted concern about the claimant's difficulty dealing with authority and with anger. (Exs 8F/4 and 9F/4-6)

Reports from the end of the 2003-2004 school year, in May 2004 indicated the claimant made great progress (Ex 9F/3), and that given her distressing and chaotic history, she had done remarkably well, having developed friendships and attaining very good grades. Her ability to add helpful contributions in the classroom was cited, as was some leadership and problem solving skill demonstrating the ability to process information and express appropriate resolution. (Ex 9F/2-3)

Considering the educational system reports from the claimant's developmental period, the undersigned finds that although the recent testing included an indication of validity, the scores seem to indicate a reduction in capacity that could be related to further life experience, ADHD, medication, substance abuse, or the claimant's belief that she is not capable of work and her desire for financial support.

PageID.36-37.

It is uncontested that plaintiff's IQ met the requirement of Listing 12.05C; at age 21, she had a full-scale IQ score of 69. In addition, plaintiff had other severe impairments which imposed work-related limitations, including ADHD, type II diabetes mellitus, obesity and status-post surgery for benign retroperitoneal tumor with residual dysesthesia of the left leg. PageID.34. By definition, "[a] severe impairment is one which significantly limits . . . physical or mental ability to do basic work activities." *Heston*, 245 F.3d at 534. Plaintiff's other limitations are reflected in the RFC which limited her to the performance of routine one or two-step tasks, with no more than occasional contact with the public, and no fast paced work requirement. PageID.37.

Based on this record, the only matter at issue is whether plaintiff has deficits in adaptive functioning which initially manifested before age 22. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West*

7

*v. Commissioner Social Security Administration*, 240 Fed. Appx. 692, 698 (6th Cir. 2007), citing

*Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993).  Here, plaintiff had a history of problems dating

back to her placement in special education in 1996 (when she was a six- or seven-year-old), at which

time she was functioning below grade level in all academic areas, and had socialization skills

determined to be two years below age appropriate behavior.  PageID.504-505.  A report from May

1, 2002 stated that plaintiff had a history of significant disruptive behavior in the classroom, peer

conflicts, was often off task, and had problems with concentration.  PageID.451.  By 11th grade, in

2007, plaintiff was reading at a 5th grade level and performing math at a 3rd grade (i.e., 3.6 grade)

level.  PageID.366, 370.  Her educational disabilities were referenced as "Mental Retardation /

Mentally Impaired / Intellectually Limited" and an "Emotional Disturbance / Behavior Disorder".

PageID.366.  Based on this record, plaintiff had significant deficits which were identified when she

was in grade school and persisted throughout high school.  The ALJ's conclusion that there was "a

reduction in capacity that could be related to further life experience" is not supported by substantial

evidence.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42

U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate the entire record to determine

whether plaintiff's deficits in adaptive functioning meet the requirements of Listing 12.05C.

> **B.**     **The ALJ committed reversible error by failing to
> recuse himself.**

Plaintiff contends that the ALJ should have recused himself.  At the hearing, both the

ALJ and plaintiff's counsel discussed counsel's motion to recuse, which the ALJ denied.  PageID.49-

50, 224-225, 227.

The courts have long applied the presumption that policymakers with

decisionmaking power exercise their power with honesty and integrity.  *Schweiker*

8

> *v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982); *NLRB*
> *v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1451 (6th Cir.), *cert. denied*, 474
> U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985).  The burden of overcoming the
> presumption of impartiality "rests on the party making the assertion [of bias],"
> *Schweiker*, 456 U.S. at 196, 102 S.Ct. at 1670, and the presumption can be overcome
> only with convincing evidence that "a risk of actual bias or prejudgment" is present.
> *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).  In
> other words, any alleged prejudice on the part of the decisionmaker must be evident
> from the record and cannot be based on speculation or inference.

*Navistar International Transportation Corp. v. United States Environmental Protection Agency*, 941

F.2d 1339, 1360 (6th Cir. 1991).  Plaintiff's theory, as outlined in his motion for recusal is as

follows:

> Your clear prejudice against the concept of paying benefits to any human being
> having the misfortune of appearing before you is obvious.  That prejudice is
> manifested in either an inability or an unwillingness to reasonably construe evidence.

PageID.224.

The basis for plaintiff's claim in this Court is that "ALJ Prothro is completely

incompetent, as his decision in this case confirms" and that the ALJ "is biased against making

reasonable decisions about evidence and against following the rather clear rules that are supposed

to govern both his conduct and the conduct of all ALJs."  Plaintiff's Brief at PageID.595.  As

discussed, the undersigned concludes that the ALJ's decision in this case is not supported by

substantial evidence.  However, this is no excuse for plaintiff's counsel to refer to him as

"completely incompetent."  Counsel should adhere to the Court's standards for civility in

professional conduct, which include as part of the Attorneys' Responsibility to the Court that "We

will speak and write civilly and respectfully in all communications with the Court."  There is no

evidence of bias as alleged by counsel.  Accordingly, plaintiff's claim of error will be denied.

## IV.  CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-

evaluate the entire record to determine whether plaintiff's deficits in adaptive functioning meet the

requirements of Listing 12.05C.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 27, 2017                          /s/ Ray Kent                                        
                                                RAY KENT
                                                United States Magistrate Judge

10